UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANLEY SUMMERVILLE, et al., | No. 14–cv–7653 (KM)(MAH) |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| DETECTIVE SERGEANT M. GREGORY, et al., | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.:**

This Section 1983 case arises from an allegedly unconstitutional detention of the plaintiffs by a number of New Jersey State Troopers. It now comes before the Court on the Rule 12(b)(6) motion (ECF no. 37) of one defendant, State Police Colonel Joseph R. Fuentes, to dismiss the Third Amended Complaint ("3AC", ECF no. 33). That Third Amended Complaint was filed in response to Col. Fuentes's motion to dismiss the Second Amended Complaint. Magistrate Judge Clark, in granting leave to amend (ECF no. 32), put off Col. Fuentes's substantive arguments, stating that they would be better addressed in a motion to dismiss the Third Amended Complaint. Hence this motion.

Col. Fuentes argues that any liability based on the actions of the troopers does not extend to him, because the complaint does not adequately allege a pattern and custom of violations that he knew of or acquiesced in. However cogent those contentions may be, they cannot be settled at the pleading stage. The allegations of the complaint are adequate, and the motion to dismiss will be denied.

1

**Standard**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed R. Civ. P. 8(a). For purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 555, 570; see also *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

**The Underlying Incident**

These allegations have not been tested by any fact finder, but are accepted as true for purposes of a motion to dismiss only.

This action under 42 U.S.C § 1983 alleges that State troopers confronted and detained the plaintiffs, in violation of their Fourth Amendment rights and on the basis of racial profiling, and thereafter filed a misleading police report. Plaintiffs are "African male[s] whose color is black and who appear[] to be African-American." (3AC ¶¶ 5, 6) They allege that they were in a shopping center mall, loading items into newly purchased suitcases in the rear compartment of their car. At that point, several unmarked police cars chased and then blocked a Lexus driven by an African-American male (whose name was later revealed to be Parker), about 30 to 40 yards away from the plaintiffs'

car. Parker was arrested. Several of the officers, guns drawn, ran over to the plaintiffs; white persons nearby were left undisturbed. Plaintiffs were handcuffed, forced to the ground, and asked if they knew Parker. The officers checked for warrants; asked for and got consent to search the plaintiffs' car; and checked mall surveillance tapes to verify whether the plaintiffs had been shopping. The handcuffs were then removed. Later, the officers wrote an investigative report. This omitted the fact that plaintiffs were 30 to 40 yards from the location of the arrest. (3AC ¶¶ 36–67)

**Analysis**

The only issue on this motion is whether the complaint, assuming it alleges a cause of action against the individual State troopers, adequately alleges a basis to hold Col. Fuentes liable as their commanding officer. His liability is alleged to rest on failure to act, inadequate training of officers, and acquiescence in a pattern and practice of unlawful stops. (*See* 3AC, Second and Third Causes of Action) The complaint cites *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).

The liability of a defendant in a Section 1983 civil rights action cannot be predicated on *respondeat superior*. *See Shaw by Strain v. Stackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990); *Monell*, 436 U.S. at 694, 98 S. Ct. 2018; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parrat v. Taylor*, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). There must be some personal responsibility.

A supervisor may be held liable under Section 1983 if that supervisor was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also A.M. ex rel J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)("A supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights,

3

directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.")

The plaintiffs here rely specifically on a theory that Col. Fuentes, who occupied a policymaking position, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d at 586 (quoting *Stoneking v. Bradford Area Scho. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989). A "policy" may consist of an official announcement or statement. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). A "custom" may be found where "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480). The plaintiff must show (here, allege) that the municipal policy or custom was the proximate cause of the injuries suffered. *Id.*

A liability-creating "policy" may stem from a failure to properly train personnel. Such a theory, however, is a "most tenuous" basis for liability. *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). In *Thomas v. Cumberland County*, 749 F.3d 217 (3d Cir. 2014), the Court of Appeals helpfully summarized the elements of such a "failure-to-train" claim:

> Where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("*Canton*")). Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury;" or in other words, "the deficiency in training [must have] actually caused" the constitutional violation. *Canton*, 489 U.S. at 391.

*Id.* at 222.

"Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of

failure to train.'" *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011)." Ordinarily, but not always:

> [T]he Supreme Court posited in *Canton* that in certain situations, the need for training "can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" even without a pattern of constitutional violations. 489 U.S. at 390 n.10. *Connick* offered a hypothetical example of this "single-incident" failure-to-train liability. Because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," if the city arms the officers with firearms, "the need to train officers in the constitutional limitations on the use of deadly force" is "so obvious" that a failure to provide such training could provide a basis for single-incident municipal liability. *Id.* Liability in single-incident cases depends on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." [quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 1391 (1997).

*Thomas*, 749 F.3d at 223–24. I read the Supreme Court to be saying that such a claim would be out of the ordinary course.

Here are the relevant allegations of the complaint[1] as to Col. Fuentes, custom and policy, and failure to train:

Col. Fuentes entered the NJSP in 1978 and became Superintendent in 2003. He has broad power over personnel and hiring. As part of a 1999 consent decree, the NJSP have adopted a protocol ("F-55") designed to ensure that motor vehicle stops are proper and race-neutral. (3AC ¶¶ 22–24, 30) Persons of color are underrepresented in the NJSP, particularly at the higher ranks. (3AC ¶¶ 27–29, 32–33) There is at least claim of race discrimination involving Col. Fuentes that is pending, and on information and belief there are more. (3AC ¶¶34–35)

---

[1] These allegations, too, are accepted as true for purposes of a motion to dismiss only.

I now summarize certain of the allegations (there are more, overlapping ones) which are stated "upon information and belief":

(1) There is a widespread practice in the NJSP, of which Col. Fuentes is aware, of falsifying reports to disguise stops without reasonable suspicion or probable cause Col. Fuentes has not remedied it by disciplining or training officers. (3AC ¶¶ 68–69)

(2) There is a widespread practice in the NJSP, of which Col. Fuentes is aware through the 1999 consent decree, official reports and civilian complaints, of racial profiling with respect to stops and arrests. The 1999 decree put in place a salutary policy, but it has not been adhered to. Col. Fuentes has not remedied it by disciplining or training officers, despite an existing protocol requiring periodic reviews. (3AC ¶¶ 70–71, 102–03)

(3) Better anti-bias training method have been used to minimize discrimination by police. Col. Fuentes is aware of them, but has not implemented them. (3AC ¶¶ 112–14)

(4) The State Attorney General's rejection of the plaintiffs' complaint resulted from these widespread practices and the acquiescence of Col. Fuentes. (3AC ¶¶ 72–74) The investigation was inadequate, and did not involve contacting the plaintiffs. (3AC ¶ 77)

(5) The officers were not disciplined or subjected to increased supervision, and Col. Fuentes was aware of this. (3AC ¶¶ 75–76, 78)

(6) The defendant officers' acts themselves demonstrate that training was deficient, but were ignored by Col. Fuentes despite his knowledge of the 1999 consent decree and past discrimination. (3AC ¶ 79)

These allegations are not wholly without a basis in the history of the NJSP, but they are not very specific, either. There is also a certain irony in using the consent decree (now 17 years old) and the NJSP's subsequent promulgation of guidelines to avoid racial profiling as proof that there *is* a

policy in favor of racial profiling. But that is for another day. Actual patterns and practices within the NJSP may depend on information largely within the control of defendants. I will deny the motion to dismiss and permit the claims to go forward.

Finally, Defendant Fuentes expresses concern that this is a "fishing expedition." Such concerns are better addressed to discovery requests, should they turn out to be overbroad. I am confident that the Magistrate Judge will ensure that this relatively simple claim does not get out of hand. One method might be to prioritize discovery relating to the incident itself, and to the officers involved in it, in order to focus the claims.

## ORDER

Defendant State Police Colonel Joseph R. Fuentes having filed a motion (ECF no. 37) pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Third Amended Complaint (ECF no. 33); and the plaintiffs having filed a response (ECF no. 40); and Fuentes having filed a reply (ECF no. 41); and the court having considered the matter without oral argument; for the reasons stated in the foregoing Opinion, and good cause appearing therefor:

IT IS this 11th day of March, 2016

ORDERED that the motion (ECF no. 37) of Defendant State Police Colonel Joseph R. Fuentes to dismiss the complaint is DENIED.

                                                **Hon. Kevin McNulty**
                                                **United States District Judge**